UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MARVIN DENT,

                Plaintiff,

      - v -

UNITED STATES TENNIS ASSOCIATION,
INC., et al.,

                Defendants.
----------------------------------------------------------------x

**MEMORANDUM ORDER**

CV-08-1533 (RJD)(VVP)

POHORELSKY, Magistrate Judge:

The defendants have moved to strike certain allegations in the plaintiff's complaint, and Judge Dearie has referred the motion to me for decision. The defendants contend that the allegations at issue, which accuse the United States Tennis Association, Inc. ("USTA") of a "legacy" of discriminatory conduct, are highly prejudicial and inflammatory and are based on irrelevant and inadmissible assertions of fact. For the reasons below the defendants' motion is granted.

## BACKGROUND

The plaintiff Marvin Dent is an African-American employee of the defendant USTA, having served as the Director of its Tournament Training Program at the National Tennis Center in New York since 1999. In April 2007 he applied for the then-vacant position of Director of Tennis at the Center, but was not hired. He alleges that the USTA's decision to hire a less-qualified white person to fill the position was motivated by racial animus, and brings this action under various federal and state statutes barring racial discrimination in employment.[1]

---

[1] The present complaint asserts claims under 42 U.S.C. § 1981, the New York Human Rights Law, N.Y. Exec. Law §§ 290-301, and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to -131. The plaintiff has also filed a complaint with the Equal Employment Opportunity Commission alleging discrimination on the basis of race and age, and contemplates amending the

The allegations to which the defendants' motion is addressed are found at paragraphs 34 through 36 of the complaint, which read as follows:

> 34. Perhaps the most disgraceful aspect of the USTA's unwillingness to consider Mr. Dent as a serious candidate for the position of Director of Tennis is the fact that Mr. Dent believed that the USTA actually cared about fostering a diverse atmosphere based on merit, tolerance and a fundamental devotion to the sport of tennis, notwithstanding the USTA's legacy as an elitist, racially exclusive institution.
>
> 35. Indeed, several recent, highly publicized episodes underscore the USTA's documented history of discrimination and racial exclusion. From the USTA's widely-reported settlement with the New York State Attorney General concerning the systematic exclusion of minority umpires from high profile tournaments and "white-badge"certification programs, to allegations of racial discrimination against players in the USTA's allocation of wild-card tournament spots, the continuing legacy of racial intolerance at the highest levels of professional tennis has been well-documented in recent years.
>
> 36. Even more important than these specific examples of the contemporary discriminatory mindset at the USTA is the extent to which the Associations's treatment of Mr. Dent demonstrates its fundamental resistance to cultural change. Although the Association purports to promote diversity, such claims of tolerance are merely a transparent public relations ploy, bent on persuading the world that the USTA has reformed its racist and discriminatory practices, when in fact the USTA continues to allow racial discrimination to cloud its judgment and infect its practices.

Compl. ¶¶ 34-36. The defendants seek to strike the phrase at the end of paragraph 34 beginning with the word "notwithstanding," and all of paragraphs 35 and 36.

## DISCUSSION

Motions to strike are governed by Rule 12 of the Federal Rules of Civil Procedure which permits the court to strike from pleadings "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Such motions, though not favored, *see, e.g., Correction Officers*

---

complaint to add claims under Title VII and the Age Discrimination in Employment Act once a right-to-sue letter is issued.

*Benevolent Ass'n of Rockland County v. Kralik*, 226 F.R.D. 175, 177 (S.D.N.Y. 2005), are committed to the sound discretion of the district court, *E.E.O.C. v. Bay Ridge Toyota, Inc.,* 327 F. Supp. 2d 167, 170 (E.D.N.Y. 2004). Typically, to prevail on a Rule 12(f) motion, "the defendant must demonstrate that no evidence in support of the allegation would be admissible, that the allegations have no bearing on the issues in the case, and that to permit the allegations to stand would result in prejudice to the movant." *Colabufo v. Continental Cas. Co.*, No. 04-CV-1863, 2006 WL 1210919, *6 (E.D.N.Y. Apr. 27, 2006) (*quoting Allocco v. Dow Jones & Co., Inc.,* No. 02 Civ. 1029, 2002 WL 1484400, at *1 (S.D.N.Y. July 10, 2002).

The defendants' objections to the disputed allegations in the above paragraphs center on the assertions concerning a so-called "legacy" of discrimination by the USTA.[2] The defendants correctly point out that the circumstances cited by the plaintiff as proof of such a legacy are not supported by admissible evidence. Thus, in paragraph 35 the plaintiff alleges "highly publicized episodes" as evidence of a "documented history of discrimination and racial exclusion." The highly publicized episodes, however, consist of essentially two things: a settlement agreement with the New York Attorney General and "allegations of racial discrimination," neither of which are admissible evidence of discrimination, much less a "legacy" of discrimination.

Settlement agreements, even those approved by court order, have served as targets of successful motions to strike. In *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976), the Second Circuit approved the striking of allegations concerning consent decrees precisely because they were not the product of adjudications on the merits and thus could not be

---

[2]From the context in which the word "legacy" is used in the complaint, it appears that the plaintiff intends to refer to a pattern or history of discrimination by the USTA.

used as substantive evidence of previous wrongdoing in a subsequent litigation. Following the Second Circuit's lead, other courts have similarly stricken allegations referring to settlement agreements and consent decrees. *See, e.g., Gotlin v. Lederman*, 367 F. Supp. 2d 349, 363-64 (E.D.N.Y. 2005) (Glasser, J.); *Correction Officers Benevolent Ass'n of Rockland County v. Kralik*, 226 F.R.D. 175, 177 (S.D.N.Y. 2005); *Shahzad v. Meyers*, No. 95 Civ. 6196, 1997 WL 47817, at *13-14 (S.D.N.Y. Feb. 6, 1997).

Citing various precedents, the plaintiff however argues that the settlement agreement here would be admissible to prove the defendants' discriminatory intent. It is true that various cases have found settlement agreements and consent decrees admissible to prove matters other than the truth of the allegations that led to the settlements, including such issues as knowledge, motive, and intent. *See, e.g., United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981) (SEC consent decree admissible to prove knowledge of reporting requirements); *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 179-80 (E.D.N.Y. 2006) (consent decree admitted to prove knowledge of employer's obligations under Americans with Disabilities Act); *Brotman v. National Life Ins. Co.*, No. 94 CV 3468, 1999 WL 33109, at *2 (E.D.N.Y. Jan. 22, 1999) (motive and credibility); *United States v. Warren*, No. 7:04 CR 00021, WL 1164195, at *3-4 (W.D. Va. May 17, 2005) (knowledge of what was permissible under securities laws); *Safford v. St. Tammany Parish Fire Protection Dist. No. 1*, No. Civ.A. 02-0055, 2003 WL 1873907, at *3 (E.D. La. Apr. 11, 2003) (discriminatory intent); *Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1413 (4th Cir. 1992) (discriminatory motive and intent).[3] The purpose of the plaintiff's allegation concerning the

---

[3]The plaintiff also miscited *Knafel v. Pepsi-Cola Bottlers of Akron, Inc.*, 899 F.2d 1473, 1479 (6th Cir. 1990), and *E.E.O.C. v. National Broadcasting Co., Inc.*, 753 F. Supp. 452, 455 (S.D.N.Y. 1990), as precedent for the admissibility of consent decrees; however, both cases involved the

settlement agreement here, however, is quite different from the purposes for which settlement agreements were found admissible in the cases he cites. Here, the plaintiff uses the settlement agreement as proof of the truth of the matters that led to the settlement agreement, i.e, that the defendants practiced discrimination in the past. For that purpose, each of the cases cited by the plaintiff emphasize that settlement agreements are *not* admissible. *United States v. Gilbert*, 668 F.2d at 97 (consent decree may not be used to prove liability); *Brady v. Wal-Mart*, 455 F. Supp. 2d at 179 (consent decree not admitted to prove previous discrimination); *Brotman*, 1999 WL 33109, at *2 (evidence not offered to prove the truth of the underlying factual matters recited in the consent orders); *United States v. Warren*, WL 1164195, at *3 ("Therefore, the Washington consent order could not be admitted to prove the defendant actually engaged in securities fraud in the state of Washington."); *Safford*, 2003 WL 1873907, at *3 ("the consent decree in dispute does not stand as evidence that the fire department ever discriminated against other employees in the past"); *Hugo's Skateway*, 974 F.2d at 1413 ("evidence of the consent order was not admitted to prove the truth of the matters on which compromise had been reached . . ., i.e., that Hugo's had in the past discriminated against blacks").

The other "highly publicized episode" alleged by the plaintiff to be proof of a legacy of discrimination concerns allegations of discrimination, not with respect to employment, but rather in the allocation of wild-card berths in tournaments sponsored by the USTA. The complaint

---

admissibility of evidence of the defendant's *conduct*, before the entry of the consent decree, rather than the consent decree itself. Similarly, a close reading of another case cited by the plaintiff, *Glass v. Philadelphia Elec. Co.*, 34 F.3d 188 (3d Cir. 1994), discloses that the grounds for reversal by the court of appeals concerned hostile work environment evidence precluded by the district court's *in limine* ruling, not the settlement agreement evidence that was also precluded by the ruling. 34 F.3d at 195 ("we conclude that the district court abused its discretion by repeatedly barring Glass at trial from introducing evidence about the hostile work environment at Eddystone and from eliciting testimony of how it related to Glass's performance").

provides no further detail about the allegations. At oral argument, however, the defendants advised the court that the only such allegations of discrimination of which they were aware were made by a player in a civil action in this court some eight years ago.[4] That action was dismissed on summary judgment. *See Washington v. U.S. Tennis Ass'n*, No. 99-CV-5148, 2002 WL 1732801 (E.D.N.Y. July 22, 2002). In addition to being inadmissible as hearsay, unproved allegations of misconduct are not proof of anything. Thus, courts have stricken allegations in complaints referring to investigations of allegations of wrongdoing, even when conducted by governmental agencies. *See, e.g., In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* 218 F.R.D. 76, 79 (S.D.N.Y.2003); *Ledford v. Rapid-American Corp.*, No. 86 Civ. 9116, 1988 WL 3428, at *1-2 (S.D.N.Y. Jan. 8, 1988) (striking allegations concerning report of New York State Division of Human Rights concerning allegations of discrimination); *see also Lewis v. Nissan N. Am., Inc.,* No. 04 Civ.562, 2004 WL 1277999, at *3 (S.D.N.Y. June 9, 2004) (striking allegations concerning complaints made to New York Attorney General, the police, and the Better Business Bureau). As noted in *In re Merrill Lynch*, "Second Circuit case law makes it clear that references to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f) of the Federal Rules of Civil Procedure." 218 F.R.D. at 78.

  The plaintiff argues that the final clause of paragraph 34 – "the USTA's legacy as an elitist, racially exclusive institution" – is supported, not by the allegations in paragraphs 35 and 36, but by allegations in paragraphs 18, 32 and 33 of the complaint. Paragraph 18, however, asserts merely that persons of color have been "historically underrepresented" in the sport of

---

[4]The plaintiff did not contest the defendants' assertion in this regard.

tennis, an observation quite different from the assertion that the USTA is responsible for that under representation because of a history of discriminatory practices. Paragraph 32 refers only to the discriminatory treatment of the plaintiff, not to any history of discrimination. Paragraph 33 challenges one of the qualifications for the position sought by the plaintiff – "tennis-playing ability (with a history that includes being a ranked player preferably)"– on the ground that the USTA knew that few African-Americans could meet that qualification given "the legacy of racial exclusion in competitive tennis." Again, aside from being conclusory, that assertion is distinct from the allegation that the USTA itself has a "documented" "legacy" of racial exclusion, as asserted in the paragraphs in dispute. The court thus concludes that the plaintiff's effort to find support for his "legacy" allegations elsewhere in the complaint fails.

Finally, the plaintiff argues that it will be able to offer evidence in support of the allegation in paragraph 36 that the USTA's "claims of tolerance are merely a transparent public relations ploy, bent on persuading the world that the USTA has reformed its racist and discriminatory practices, when in fact the USTA continues to allow racial discrimination to cloud its judgment and infect its practices." Compl. ¶ 36. Specifically, the plaintiff asserts that he will seek to introduce evidence concerning the USTA Diversity Plan as proof of this "transparent" public relations effort. If the allegations in paragraph 36 were limited to that, they would survive the motion. But the allegations in paragraph 36 are bound up with, and rest entirely upon, the "specific examples of the contemporary discriminatory mindset at the USTA" asserted in paragraph 35, none of which are provable by admissible evidence. They therefore must fall along with the allegations in paragraph 35.

The allegations concerning a legacy of discrimination are of course inflammatory and go well beyond the "short and plain statement of the claim" contemplated by Rule 8(a)(1) of the Federal Rules of Civil Procedure. Indeed, they are entirely unnecessary to the statement of the plaintiff's claims, and would be prejudicial if ever reviewed by a jury. *See Nextel of New York, Inc. v. City of Mount Vernon*, 361 F. Supp. 2d 336, 339-40 (S.D.N.Y. 2005). Of greater concern to the defendants is the potential for prejudice if such allegations are repeated in the media, a heightened possibility with the approach of a major event sponsored by the USTA, the United States Open tennis tournament in late summer. Although courts should be cautious at the pleading stage in deciding that material in a complaint would not be relevant and admissible at trial, *see Lipsky*, 551 F.2d at 893, the defendants have satisfactorily established that the challenged allegations are irrelevant, immaterial and prejudicial, and that they should therefore be stricken.

## CONCLUSION

For the foregoing reasons, the defendants' motion is granted.

                                    **SO ORDERED:**

                                    */s/ Viktor V. Pohorelsky*
                                    VIKTOR V. POHORELSKY
                                    United States Magistrate Judge

Dated: Brooklyn, New York
        June 17, 2008