UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MARVIN DENT,                                              :   ECF Case CV 08-1533

                         Plaintiff,             :

             - against -                              :

UNITED STATES TENNIS ASSOCIATION,                         :
INCORPORATED, USTA NATIONAL TENNIS
CENTER INC., and DANIEL ZAUSNER, in his                   :
individual and official capacities,
                                                          :
                             Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE

*EPSTEIN BECKER & GREEN, P.C.*
*250 PARK AVENUE*
*NEW YORK, NEW YORK 10177*

**ATTORNEYS FOR DEFENDANTS**

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT  DEFENDANTS DID NOT DISCRIMINATE AGAINST DENT ....................... 1

    A.    Plaintiff Cannot Establish a *Prima Facie* Case of
Discrimination Because He Presented No Evidence
That He Was Qualified for the Director of Tennis Position ................................... 1

    B.    Defendants' Legitimate Business Reason for the Rejection of
Dent's Candidacy and Selection of Kraft is Clear and Indisputable ...................... 5

    C.    Plaintiff has Presented No Evidence of Pretext ....................................................... 6

        *(i) Failure to Ask Dent More Questions
During His Interview Not Pretext* ................................................................. 7

        *(ii) Hamilton's Testimony in No Way Demonstrates Pretext* ........................... 7

        *(iii) Plaintiff Cannot Show Pretext When He was Treated
the Same as or Better than the Other Rejected Applicants* .......................... 8

        *(iv) Preference for Ranked Player not Pretext* ................................................. 9

        *(v) Application Form Irrelevant* ...................................................................... 9

        *(vi) Plaintiff's Statistics are Not Probative and Cannot Demonstrate Pretext* .... 10

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

## CASES

**PAGE**

Anderson v. Hertz Corp., 507 F. Supp. 2d 320 (S.D.N.Y. 2007),
aff'd, 303 F. App'x 946 (2d Cir. 2008) ..................................................................................10

Chambers-English v. Unisys Corp., 2007 WL 486681 (S.D.N.Y. Feb. 14, 2007),
aff'd, 300 F. App'x 61 (2d Cir. 2008) ......................................................................................5

Disability Advocates, Inc. v. Paterson,
2008 U.S. Dist. LEXIS 103310 (E.D.N.Y. Dec. 22, 2008) .....................................................6

Ferguson v. Barram, 2000 WL 375243 (S.D.N.Y. Apr. 11, 2000) .................................................9

Gumbs v. Hall, 51 F. Supp. 2d 275 (W.D.N.Y. 1999), aff'd, 205 F.3d 1323 (2d Cir. 2000) ......6, 7

Lomotey v. Conn.-Dep't of Transp., 355 F. App'x 478 (2d Cir. 2009) ..........................................6

Mauro v. S. New England Telecomm., Inc., 208 F.3d 384 (2d Cir 2000) .......................................5

Milano v. Astrue, 2008 WL 4410131 (S.D.N.Y. Sept. 26, 2008),
aff'd, 2010 WL 2465541 (2d Cir. June 16, 2010) ............................................................3, 7, 9

O'Leary v. N.Y.S. Unified Court Sys., 2007 WL 2244483 (S.D.N.Y. Aug. 6, 2007) .................4, 5

Santos v. Engelhard Corp., 2009 WL 2432736 (S.D.N.Y. Aug. 6, 2009) .................................3, 10

Sulehria v. City of N.Y., 670 F. Supp. 2d 288 (S.D.N.Y. 2009) ..................................................4, 8

## PRELIMINARY STATEMENT

Defendants United States Tennis Association, Inc. ("USTA"), USTA National Tennis Center Incorporated ("NTC") and Daniel Zausner submit this reply memorandum of law in further support of their motion for summary judgment. Plaintiff's opposition is a gross misrepresentation of the facts which seeks to obfuscate the issues because he has failed to produce any evidence demonstrating that age or race played a part in the hiring of Whitney Kraft for the Director of Tennis position. The overwhelming evidence establishes that Dent – employed by the NTC as a tennis coach – was not selected for the position, along with about 90 other applicants, because he simply was not qualified. It is striking and telling that plaintiff has made no argument and presented no evidence whatsoever that he was as qualified for the job as Kraft, let alone more qualified, which he must do to demonstrate pretext. This dearth of evidence is fatal to his claims of discrimination. Indeed, in these circumstances, where no triable issue of fact exists, summary judgment should be granted.

## ARGUMENT

### DEFENDANTS DID NOT DISCRIMINATE AGAINST DENT

A.  **Plaintiff Cannot Establish a *Prima Facie* Case of Discrimination Because He Presented No Evidence That He Was Qualified for the Director of Tennis Position**

The overwhelming evidence, including the documents and deposition testimony, establishes that Dent is a tennis coach without the requisite administrative/managerial experience required of the Director of Tennis. The advertised job description and deposition testimony (Malanga Decl., Exs. F, I; Ex. A, Zausner Tr. 216-17; Ex. D, Kraft Tr. 105, 247; Ex. C, Kamperman Tr. 145) set forth the managerial/administrative nature of the position – including, but not limited to, responsibility for developing and managing a multi-million dollar annual budget, supervising a large multi-faceted staff, leading and coordinating all on and off-court

programs at the NTC (home of the US Open), growing the assets of the organization and implementing a robust marketing strategy.

Dent's job description, resume and testimony make clear he is and has been at least since 1999 a coach spending most of his day on court teaching tennis. (Id., Exs. H, J, R; Ex. E, Dent Tr. 109-10) Moreover, his resume characterizes his career experience exclusively as "Coaching Experience," with a self-stated "Career Focus" of "A coaching position at the Highest Level." (Id., Ex. R) He concedes that he never managed tennis programs at a large facility, or a million dollar budget, and, in fact, has virtually no budgeting experience, and never managed a full- and part-time staff of fifty or so employees. (Id., Ex. E, Dent Tr. 310-11, 314-16; Ex. A, Zausner Tr. 217)

To demonstrate his purported qualifications for the open position, Dent focuses solely on the "qualifications" section at the end of the job description. (Opp. Mem. pp. 6-7) While plaintiff cannot simply ignore all of the factors that are not in his favor, including the first two pages (out of a total of two and one-half) of the Director of Tennis job description (Malanga Decl., Ex. I) and the Director of Tennis advertisement (Id., Ex. F), even the qualifications section makes clear that the Director must have "a combination of teaching and management experience." (Id., Ex. I)

While plaintiff's counsel attempt to portray Dent's NTC work as managerial (Opp. Mem. pp. 4-5), counsel's prose is not evidence. The documentary evidence and deposition testimony establish that there is no hierarchy among NTC coaches, and Dent's training program was no more prestigious than the programs run by other NTC coaches. (Malanga Decl., Ex. G; Ex. A, Zausner Tr. 167-68; Ex. E, Dent Tr. 177; Ex. D, Kraft Tr. 249-50) Furthermore, although Dent calls himself, "Director of Tournament Training program" on his resume, the depositions demonstrate there is no such NTC title, and that Plaintiff has never served in any Director position at the NTC. (Id., Ex. E, Dent Tr. 123-24, 166, 177-78; Ex. J) Notably, Dent's resume

NY:4438267v1 2

describes his work in the 11 year period prior to his joining the NTC as "Independent Contractor . . . conducted private and group lessons in tennis, basketball, football and baseball specializing in balance and throwing." (Id., Ex. R)

To demonstrate qualifications, Dent primarily focuses on past experiences he had gathering players and coaching a start-up Davis Cup team in Cote D'Ivoire (Opp. Mem. pp. 1-4), which as Zausner testified simply "wasn't within the list of qualifications . . . we were looking for" nor "equal to managing and budgeting several million dollars and overseeing a full-time staff of 19 and a part-time staff of 30." (Malanga Decl., Ex. A, Zausner Tr. 306-07) (See also Goodstadt Opp. Decl., Ex. 9, Hamilton Tr. 144-47, 203-205) Hamilton, too, when asked to look at Dent's resume at his deposition referred to Dent's Africa experience as a "singular project of a small nature" . . . A "once off . . . that's different than being at the NTC and having every day, every week multiple things that you're managing." (Id., Ex. 9, Hamilton Tr. 203-04; see also Malanga Decl., Ex. C, Kamperman Tr. 144-47). While Dent may believe that his experience coaching a nascent Davis Cup Team qualified him for the position, "[c]ourts [on the other hand] . . . afford employers a great deal of discretion in assessing . . . credentials and qualifications of applicants and in determining . . . criteria for position." See Milano v. Astrue, 2008 WL 4410131, at *32 (S.D.N.Y. Sept. 26, 2008), aff'd, 2010 WL 2465541 (2d Cir. June 16, 2010). See also Santos v. Engelhard Corp., 2009 WL 2432736, at *8 (S.D.N.Y. Aug. 6, 2009).

An example of the smokescreen plaintiff seeks to create is evident by his focus on the qualification: "Tennis playing ability (with a history that includes being a ranked player preferably)." (Opp Mem. p. 7; Malanga Decl., Ex. R) While plaintiff states that he could not meet the ranked player qualification, at no time did defendants maintain that Dent was not qualified for the position because he was not a ranked player. In fact, defendants testified that being a ranked player was not essential to the position, but simply desirable in that it makes the director familiar with tennis competition at the highest level, and also lends credibility to the

facility's tennis programs and overall reputation. (Malanga Decl., Ex. E, Dent Tr. 148; Ex. A, Zausner Tr. 249)

Tellingly, plaintiff tries to deflect attention away from the resume he submitted in application for the Director of Tennis position and rely only on his deposition testimony. His argument that defendants are not entitled to rely on his, or any applicant's resume for that matter, is absurd. (Opp. Mem. pp. 9-10, 18-19) If defendants could not rely on resumes alone, they would have had to interview every applicant for the position, not an effective or thoughtful way to handle hiring and counter to established norms employers use to screen job applicants. This issue came up in a recent failure to promote case in which the court concluded that plaintiff failed to set forth a *prima facie* case because he was not qualified for the position. The Court stated:

> In his deposition, plaintiff stated that his "bachelor of laws degree covers criminology. . ." although this information appears nowhere in his resume or cover letter. . . . **[I]t is questionable to say the least, whether this manner of demonstrating his qualifications could ever support an inference of discrimination given that he did not bother to make defendants aware in his application of the fact that he possessed the requisite specialization.**
> 
> \* \* \*
>
> As he explained in his deposition, **he believed he did not need to offer specific evidence of his qualification until he was being interviewed for the position. This belief fundamentally misunderstands the role played by job applications in the process of screening candidates.**

Sulehria v. City of N.Y., 670 F. Supp. 2d 288, 309-10 (S.D.N.Y. 2009) (citations omitted and emphasis added). In any event, even if the Court were to consider plaintiff's deposition testimony as evidence of his qualifications, Dent still is not remotely qualified for the position. The minimal administrative experience he says he had was not the type or level of experience sought by defendants.[1] Moreover, Dent testified that his budget experience was limited to

---

[1] While Dent makes fleeting mention in his papers of a recommendation letter that Bill Mountford wrote for him, that letter was, as Dent admits, not for the Director of Tennis position. (Goodstadt Opp. Decl., Ex. 5, Dent Tr. 304-05) Moreover, Mountford wrote almost identical letters for Dent's fellow teaching professionals, including unsuccessful Director of Tennis candidate ███████ in which he refers to ██ as the "Best of the Best." (Exhibit A to Malanga Reply Declaration, dated July 23, 2010)

NY:4438267v1                                    4              REDACTED

buying nets and balls - - clearly not preparation for the USTA Billie Jean King National Tennis Center. (Malanga Decl., Ex. E, Dent Tr. 73-74) See O'Leary v. N.Y.S. Unified Court Sys., 2007 WL 2244483, at *7 (S.D.N.Y. Aug. 6, 2007) ("Defendant's decisions regarding the professional experience and characteristics sought in a candidate . . . are entitled to deference.")

**B.   Defendants' Legitimate Business Reason for the Rejection of Dent's Candidacy and Selection of Kraft is Clear and Indisputable**

Even if plaintiff had set forth a *prima facie* case (which defendants submit he has not), defendants proffered a legitimate non-discriminatory reason for selecting Kraft over Dent and the approximately 90 other applicants for the position – simply put, Kraft was more qualified. (Malanga Decl., Exs. T-W; Ex. C, Kamperman Tr. 131, 159-60; Ex. A, Zausner Tr. 287, 375) See Mauro v. S. New England Telecomm., Inc., 208 F.3d 384, 387-88 (2d Cir 2000) (stated reason that selected employee had expertise necessary for position held to be legitimate, non-discriminatory business reason for selection). In fact, Kraft had been, for over 20 years, performing the very duties required of the NTC Director of Tennis. See Chambers-English v. Unisys Corp., 2007 WL 486681 (S.D.N.Y. Feb. 14, 2007), aff'd, 300 F. App'x 61 (2d Cir. 2008) (employer satisfied burden of articulating a legitimate business reason by proffering that selected employee had been working in the same position for two years). While plaintiff asserts that defendants' articulated reason is a "hodge-podge of purported justifications" (Opp. Mem. p. 15), in fact, defendants' articulated reason could not be clearer. See O'Leary, 2007 WL 2244483, at *7.

Kraft's resume demonstrates that he had over 20 years experience as a Director of Tennis, split between the private and public sector and he, among other things, administered annual million dollar budgets; was responsible for managing programs, personnel, maintenance and upkeep for 44 public courts in nine facilities; and earlier managed a staff of 22 providing services to 3,500 members at a private club with 35 courts and a retail sport shop. He also implemented an advanced computerized reservation system. Moreover, Kraft was, and is, a

NY:4438267v1                                         5

more accomplished player than Dent, having played both professionally and earned college All American honors. (Malanga Decl. Ex. T; Ex. E, Dent Tr. 148; Ex. A, Zausner Tr. 249)

Plaintiff's argument that defendants' motion should be denied because defendant USTA allegedly offered no business justification for NTC's decisions in its EEOC submission and interrogatory responses must be rejected as yet another obfuscation effort. (Opp. Mem. pp. 12-17) Dent brought his EEOC Charge against USTA, not NTC, and USTA accurately advised EEOC that the Charge should be dismissed because USTA was not Dent's employer. Similarly, Dent served USTA, not NTC, with interrogatories. USTA accurately responded that it was not the decision maker with respect to the Director of Tennis position. Any argument that plaintiff was prejudiced because USTA did not amend its interrogatory responses after the parties later agreed that USTA and NTC would be considered joint employers for purposes of this litigation only, is absurd. Plaintiff was entitled to, and did, depose defendants. Plaintiff can hardly argue being "sandbagged" with new evidence when defendants or their representatives testified when deposed that Kraft was more qualified for the position. "[I]t is well recognized that preclusion is a drastic remedy and should be exercised with discretion and caution." Disability Advocates, Inc. v. Paterson, 2008 U.S. Dist. LEXIS 103310 (E.D.N.Y. Dec. 22, 2008) (where court precluded testimony by a witness who had knowledge of critical issues, but whom plaintiff failed to identify during discovery).

C.  **Plaintiff has Presented No Evidence of Pretext**

Plaintiff has produced no evidence to demonstrate that defendants' selection of Kraft is pretext for unlawful age or race discrimination. In fact, plaintiff offers no evidence that his qualifications are comparable to, let alone far superior to, Kraft's, which he must do to demonstrate pretext. See Lomotey v. Conn.-Dep't of Transp., 355 F. App'x 478 (2d Cir. 2009); Gumbs v. Hall, 51 F. Supp. 2d 275, 281 (W.D.N.Y. 1999), aff'd, 205 F.3d 1323 (2d Cir. 2000) (granting summary judgment and noting that plaintiff "strikingly" conceded the excellent

credentials of the selected candidate in her opposition brief.)[2] Instead, plaintiff attempts to distract the court with alleged evidence of pretext – none of which creates a triable issue of fact.

    *(i) Failure to Ask Dent More Questions During His Interview Not Pretext*

Plaintiff's attempt to demonstrate pretext by arguing that Zausner should have probed Dent and sought to elicit experiences not evident from his resume must fail. See Gumbs, 51 F. Supp. 2d at 281 ("courtesy" interview to "assuage plaintiff's feelings" not pretext for discrimination). Dent's interview simply cannot demonstrate pretext for age or race discrimination when Zausner interviewed ▓▓▓▓ – who is white and younger than Dent - in the same manner as Dent. (Malanga Decl., Ex. A, Zausner Tr. 301-02, 325) Moreover, the fact that Dent and ▓▓▓▓ were afforded "courtesy" interviews actually demonstrates that they were not real contenders for the position because they did not meet the necessary job requirements. See Milano, 2008 WL 4410131, at *37 n.29 (citation omitted) (the Court, rejecting plaintiff's argument that he was not properly considered for the position, held "Indeed, without any showing of improper motive, [even] a 'pre-selection' [of another candidate] could be construed to provide a non-discriminatory . . . motive for the . . . failure to select plaintiff for a particular position - - *i.e.*, that management had some other individual in mind when they created the position in question." In addition, plaintiff cannot simply ignore the evidence that other experienced coaches younger than himself and not African American, including internal candidates ▓▓▓▓ and ▓▓▓▓, and external candidate ▓▓▓▓, were not granted even a courtesy interview. (Malanga Decl., Ex. A, Zausner Tr. 326; Ex. BB)

**REDACTED**

    *(ii) Hamilton's Testimony in No Way Demonstrates Pretext*

Plaintiff makes three assertions regarding Hamilton's testimony, none of which is accurate or material. First, plaintiff's representation that Hamilton testified that plaintiff was qualified for the Director of Tennis position is false. (Opp. Mem. pp. 19-20) Hamilton testified:

---

[2] The management/administrative qualifications Zausner and the NTC were looking for is further underlined by a look at ▓▓▓▓, who was considered one of the "strong candidates." (Malanga Decl., Ex. A, Zausner 297; Ex. Z)

NY:4438267v1            7

"the [lack of a] combination of leadership responsibility in concert with managing multiple projects and relationships, that would be my reservation . . . that would be my concern, matching the resume against qualification requirements." (Goodstadt Opp. Decl., Ex. 9, Hamilton Tr. 211; see also 202) Moreover, even if Hamilton testified that Dent were qualified for the job (which he did not), it is immaterial because he was not the decision maker. (Id., Ex. 9, Hamilton Tr. 136, 177)

Second, plaintiff's assertion that Hamilton testified that Zausner should have asked Dent more questions about his experience completely misconstrues Hamilton's testimony. (Opp. Mem. pp. 19-20) (See Goodstadt Opp. Decl., Ex. 9, Hamilton Tr. 216-17) In any event, in this instance a greater effort to elicit qualifications would have been fruitless. See Sulehria, 670 F. Supp. 2d at 312 (holding that plaintiff's allegation that he was not properly considered for the job does not somehow exempt him from demonstrating that he was qualified for the job).

Third, Plaintiff argues that Hamilton's testimony that the "core" of the position is "the supervision of ... tennis professionals" (Opp. Mem. p. 6), conflicts with Kamperman's testimony that the position was approximately 80 percent a "management administrative position." (Malanga Decl., Ex. C, Kamperman Tr. 16) While the testimony is not conflicting, plaintiff cannot ignore Hamilton's other testimony that administrative responsibilities were a "significant component" of the position and that the role was the "oversight of operations on the tennis courts day to day." (Goodstadt Opp. Decl., Ex. 9, Hamilton Tr. 122)

      *(iii) Plaintiff Cannot Show Pretext When He was Treated the Same as or Better than the Other Rejected Applicants*

Plaintiff's attempt to demonstrate pretext by arguing that Kantarian (whom plaintiff chose not to depose) somehow viewed Dent as a "serious candidate" must be rejected. Early in the process, Kantarian forwarded to Zausner a recommendation he received from parents of one of Dent's students, with a note to Zausner, "Let's take a look at this candidate." (Goodstadt Opp. Decl., Ex. 21) Zausner did in fact "take a look at" Dent and determined that his

experience was not suitable for the position. While plaintiff attempts to demonstrate pretext by arguing (again without any evidentiary basis) that defendants somehow failed to follow their own protocol of having Hamilton and Kantarian meet with the top three contenders, there was no such protocol. (See Zausner Aff. ¶ 7) In any event, plaintiff cannot show pretext when no applicant, besides Kraft, met with Hamilton and Kantarian, and Kraft's meeting with them was just a courtesy. See Ferguson v. Barram, 2000 WL 375243, at *9 (S.D.N.Y. Apr. 11, 2000) (plaintiff's attempt to show pretext by alleging that the interview was "'unusual'" and "a shortcut designed to enable defendant to reject plaintiff's application" is baseless).

### (iv) *Preference for Ranked Player not Pretext*

Plaintiff's attempt to demonstrate pretext by referencing the ranked player qualification on the job description also must fail. Being a ranked player was not essential to the position as the deposition testimony shows. Even if it were, plaintiff offers absolutely no evidence that being a ranked player "is a qualification that otherwise qualified Caucasian applicants are more likely to possess than equally qualified African-American applicants," as he alleges in his opposition memorandum. (Opp. Mem. p. 20) "Plaintiff's unsupported speculation is not admissible evidence sufficient to create a genuine issue of fact." See Milano, 2008 WL 4410131, at *37.

### (v) *Application Form Irrelevant*

Dent never filled out the very form he claims is suspect, and Zausner never saw the online application forms filled out by any applicant for the Director of Tennis position. (Malanga Decl., Ex. A, Zausner Tr. 282-83) In fact, Zausner, unaware that race was a category on the online form, speculated at his deposition that race was on the form to track candidates for diversity purposes, which would certainly not be evidence of discrimination. (Id.) Thus, the on-line application form, where such identification was optional, simply cannot demonstrate that defendants' reasons for selecting Kraft are pretextual.

    (vi) *Plaintiff's "Statistics" are Not Probative and Cannot Demonstrate Pretext*

Plaintiff has no evidence of "racially disparate hiring practices" as he alleges in his opposition. (Opp. Mem. p. 11; see Defendants' Reply to Plaintiff's 56.1 Statement of Additional Facts, ¶¶ 184-190). For example, out of the 17 employees Kamperman was involved in hiring from 2004-2009, 10 were minorities and 8 of those 10 were African–American. (Id. at ¶ 188). In any event, plaintiff's "statistics" as to the number of hirings are meaningless absent evidence of the relevant applicant pool. See Anderson v. Hertz Corp., 507 F. Supp. 2d 320 (S.D.N.Y. 2007), aff'd, 303 F. App'x 946 (2d Cir. 2008) (citation omitted) ("it would be 'unrealistic to suppose that employers can eliminate, or discover or explain, the myriad of innocent causes that may lead to statistical imbalances in the composition of their work forces.'") Moreover, plaintiff's attempt to show pretext by alleging that there is a racial imbalance at the USTA must fail as alleged racial imbalance of the workplace is, as a matter of law, insufficient to rebut defendant's legitimate and non-discriminatory reason for not promoting him. See Santos, 2009 WL 2432736, at *13.

## CONCLUSION

Based on the foregoing, defendants respectfully request that this Court grant summary judgment in their favor and dismiss plaintiff's complaint in its entirety.

Dated: New York, New York
   July 26, 2010

            EPSTEIN BECKER & GREEN, P.C.

            By: /s/ Kenneth G. Standard
              Kenneth G. Standard
              Lauren Malanga Casey
              250 Park Avenue
              New York, New York 10177-0077
              (212) 351-4500
              Attorneys for Defendants